ELECTRONICALLY FILED

Bruce P. Keller (BK 9300)
S. Zev Parnass (SP 3284)
DEBEVOISE & PLIMPTON LLP
919 Third Avenue
New York, New York 10022
(212) 909-6000
*Attorneys for Plaintiffs*

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -X

|  | : |  |
|---|---|---|
| NATIONAL FOOTBALL LEAGUE and NFL PROPERTIES LLC, | : |  |
| Plaintiffs, | : | 06 Civ. 9921 (LAK) |
| v. | : | ECF Case |
| COMERCIAL LT BARODA S.A. D/B/A BETUS and COMMERCIAL L.T. BARODA (CANADA) LTÉE D/B/A BETUS, | : |  |
| Defendants. |  |  |

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - X

## DECLARATION OF GARY M. GERTZOG

Gary M. Gertzog hereby declares as follows:

1.      This declaration is submitted in support of the motion for a default judgment of plaintiffs National Football League ("NFL") and NFL Properties LLC ("NFL Properties") (collectively, "Plaintiffs").

2.      I am the Senior Vice-President of Business Affairs and General Counsel of NFL Properties.  I have personal knowledge of the facts set forth below.

3.      NFL Properties is indirectly owned jointly in equal shares by the member clubs ("Member Clubs") of the NFL.  NFL Properties is a subsidiary of NFL Ventures

L.P., which ultimately is owned jointly in equal shares by the thirty-two Member Clubs. NFL Properties is the entity responsible for (a) licensing the trademarks of the NFL and its Member Clubs for various commercial purposes and (b) the enforcement of those trademarks.

4.     NFL football is, and for many years has been, among the most popular spectator sports in the United States.  The NFL brand of professional football, and the identifying names, logos, uniform designs and other indicia associated with the NFL and the Member Clubs, are enormously popular with both sports fans and the general public. The NFL's advertising, promotional and marketing efforts have resulted in widespread and favorable public acceptance and recognition for its brand of professional football, as well as the trademarks that identify it.

5.     The trademarks of the NFL and its member clubs ("NFL Marks") include, but are not limited to, the various federally-registered trademarks set forth in Exhibits A and B.  The NFL Marks receive enormous exposure in the marketplace.  Millions of television viewers and attendees at NFL games regularly see these marks displayed on the field, throughout game broadcasts and in connection with authorized sponsor advertising.  Millions more see these marks in newscasts, newspapers, magazines, the Internet and other media.  As a result, the NFL Marks are among the most widely-recognized trademarks in the United States, as well as among the most popular with consumers.

6.      The NFL Marks serve a source-identifying function by enabling consumers to quickly recognize official NFL teams, events, and licensed products, services and promotions.  Based on the extensive advertising, promotional and marketing efforts of the NFL, NFL Properties and the Member Clubs, the NFL Marks have acquired powerful secondary meaning and fame among consumers, representing significant goodwill of great value to the NFL, NFL Properties and the Member Clubs.

7.      On behalf of the NFL and the Member Clubs, NFL Properties has established an extremely successful business in the commercial licensing of the NFL Marks.  NFL Properties has exclusively and successfully marketed and promoted NFL Marks on and in connection with many different goods and services through its licensees, sponsors and other business partners.  Given the enormous popularity of NFL football, a license to manufacture goods or offer services bearing or involving the NFL Marks is a highly coveted and valuable commercial asset precisely because it conveys the message of the NFL's or the Member Clubs' sponsorship or endorsement.

8.      Defendants Comercial LT Baroda S.A. d/b/a BetUS and Commercial L.T. Baroda (Canada) Ltée d/b/a BetUS (collectively, "Defendants" or "BetUS") openly and notoriously operate a gambling website, located at www.betus.com (the "Website"), that offers betting on NFL games.  The BetUS.com website previously stated:  "At BetUS.com, we are fans of the NFL, so we know what it takes to win at football betting. That's why we're America's favorite sportsbook.  Throughout this football season, we

3

want to be your sportsbook for the NFL.  We've got the best odds on every single game of the season.  Join BetUS.com and bet on your team today!"  *See* Exhibit C.

      9.     BetUS previously has disseminated, and in some cases continues to disseminate, the following advertising and promotional materials, each of which makes prominent use of the exact NFL Marks, often in ways that mimic the uses made by NFL sponsors and licensees:

    (a)    BetUS' corporate brochure, still available at http://www.BetUS.com/images/pdf/BetUS-CorporateBrochure.pdf, features the federally-registered Vince Lombardi Trophy trademark on its cover, as well as the uniform designs, helmet designs and logos of various Member Clubs throughout the brochure.  *See* Exhibit D.

    (b)    BetUS has designed downloadable "wallpaper" for a consumer's PC, still available at http://www.betus.com/nfl-football/wallpapers, for each of the 32 Member Clubs.  The "wallpaper" consists of an advertisement for BetUS featuring a given Member Club's logo and a photograph of one of that Member Club's players in his team uniform.  *See* Exhibit E.

    (c)    BetUS has created a 2005-2006 Swimsuit Calendar (the "Calendar"), which uses the logos of all 32 Member Clubs and the specially-designed SUPER BOWL XL logo.  *See* Exhibit F.

(d)    BetUS has designed an "NFL Schedule," still available at http://www.betus.com/images/pdf/2006-2007_NFL_Football_Schedule_BetUS.pdf, which prominently features the NFL Shield Logo juxtaposed against the BetUS logo. *See* Exhibit G.

(e)    On its Website, BetUS either previously used or continues to use: (1) the helmet designs of all 32 Member Clubs (containing their logos); (2) the NFL Shield Logo; (3) the NFC and AFC logos; (4) the specially-designed SUPER BOWL XL logo; (5) the Vince Lombardi Trophy; (6) the uniform designs of various Member Clubs (through pictures of various players appearing in their official uniforms and helmets); (7) the SUPER BOWL and PRO BOWL marks; and (8) the names of all 32 Member Clubs. *See* Exhibit H.

(f)    BetUS has placed advertisements for its affiliated website, www.betus.net, on scores of billboards across the United States. At BetUS.net, BetUS provides information to assist the placing of bets or wagers on NFL games. The billboards depict people wearing NFL team jerseys, which are distinctive and protected by federal trademark registrations. These include billboards that either previously were, or still are, located in: (1) the Boston area, depicting a man wearing a New England Patriots jersey. The Patriots name and logo and the NFL Shield Logo are visible; (2) New York City, depicting two men, one wearing a New York Jets jersey and

one wearing a New York Giants jersey.  The Jets logo and the NFL Shield Logo are visible; (3) Cincinnati, depicting a man wearing a Cincinnati Bengals jersey.  The Bengals logo and the NFL Shield Logo are visible; (4) Philadelphia, depicting a man wearing a Philadelphia Eagles jersey. The Eagles mark and the NFL Shield Logo are visible; (5) the Cleveland area, depicting a man wearing a Cleveland Browns jersey.  The NFL Shield Logo is visible; and (6) the Minneapolis/St. Paul area, depicting a man wearing a Minnesota Vikings jersey.  The NFL Shield Logo is visible.  *See* Exhibit I.

(g)     BetUS placed an advertisement for BetUS.net in the USA Today Sports Weekly (August 30-September 5) depicting a man wearing a New England Patriots jersey.  *See* Exhibit J.

(h)     BetUS created a "Double Page Fantasy Football Ad" that features the logos, uniform designs and helmet designs of the Green Bay Packers and New England Patriots.  *See* Exhibit K.

(i)     BetUS issued a "2006 Football Playbook" that features the Chicago Bears' logo, uniform design and helmet design on its cover.  *See* Exhibit K.

10.     BetUS also ran radio advertisements that offered listeners the opportunity to win "Super Bowl" tickets "for life."  *See* Exhibit L.  This violates the express terms set forth on the backs of Super Bowl tickets, which prohibit the use of game tickets in

6

connection with "advertising, promotion or any other commercial purposes (including contests, sweepstakes and giveaways)" without the express written consent of the NFL. *See* Exhibit M.

11.   Plaintiffs made repeated efforts to persuade BetUS to cease the specific conduct objected to in this action.  On February 2, 2006, NFL Properties sent BetUS a letter objecting to its unauthorized use of the NFL Marks on its Website and in its Calendar and demanding that it discontinue permanently all uses of NFL Marks.  In the letter, BetUS also was advised that the operation of a business using the Internet for the transmission of bets or wagers on NFL games violates federal criminal law.  A true and correct copy of this letter is attached as Exhibit N.

12.   Because no response to the February 2 letter was received, NFL Properties sent a follow-up letter to BetUS on February 17, 2006 in which it reiterated its demands. *See* Exhibit O.  No response was received to this letter either, but with the end of the previous NFL season, BetUS ceased promoting its NFL sportsbook.

13.   Not only did BetUS ignore that letter, it committed new and different violations beginning with the current NFL season.  Accordingly, on August 25, 2006, NFL Properties sent BetUS another letter advising it that its Super Bowl ticket giveaway violates the express terms set forth on the backs of those tickets. *See* Exhibit P.  BetUS also was advised that its use of the SUPER BOWL mark violated the NFL's rights. *Id.* No response to this letter was received.

14.     As a result of BetUS' actions, Plaintiffs have sustained damages in the form of (1) lost commercial licensing fees in the amounts that NFL sponsors and licensees pay for uses of NFL Marks similar in scope and type to those made by BetUS, (2) loss of control over the NFL Marks, (3) lost sales to consumers of goods, such as calendars bearing the NFL Marks, that are offered by both the NFL or the Member Clubs and BetUS, and (4) potential harm to the NFL Marks' goodwill among those who have purchased goods or services from Defendants under the false impression that Defendants had an association or affiliation with Plaintiffs.

15.     In addition, Plaintiffs have incurred substantial attorneys' fees in this action.

16.     Plaintiffs are prepared, at any inquest scheduled by the Court, to document these damages and expenses.

I declare under penalty of perjury that the foregoing is true and correct. Executed at New York, New York on January 11 , 2007.

_____
Gary M. Gertzog